IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESLEY S. MITCHELL,<br>    Plaintiff | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 05- 80 |
| TOWNSHIP OF MILLCREEK and<br>MILLCREEK TOWNSHIP POLICE<br>DEPARTMENT,<br>    Defendants | )<br>)<br>)<br>)<br>) | |

**PLAINTIFF'S PRETRIAL NARRATIVE**

I.      FACTS

      The lawsuit filed by Plaintiff, Lesley Mitchell, arose from the Defendants' violation of the Pennsylvania Human Relations Commission Act (43 P.S.A. §951, et seq.) and Defendants' violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act (42 U.S.C. §2000e(2); 42 U.S.C.A. §2000e(k)).  Essentially, the Defendants wrongfully and illegally denied Plaintiff light duty or modified work assignments which previously had been granted to other employees.

      For at least the last twenty years or more, it was the well-established policy and practice of the Millcreek Township Police Department, as sanctioned by the Board of Supervisors, to grant light duty assignments to any officer who suffered from a partial disability

which rendered him unable to fulfill all of the regular duties of a police officer. The light duty assignment typically involved work at the station house. It was likewise the well-established policy and practice of the police department that such an officer would be permitted to have a light duty assignment for as long as his partial disability lasted. This could be a matter of days or a matter of months depending on the nature of the injury or illness. However, it is clear that at the commencement of each light duty assignment, no specific deadline was set and no time limitations were established by Defendants as to the duration of the light duty assignment. To the contrary, the duration of light duty was to be determined by the timing of the officer's full recovery from his disabling condition. There is no dispute about any of the foregoing facts.[1]

It is also undisputed that this longstanding policy abruptly changed, without advance warning, when Plaintiff became pregnant. Plaintiff began her employment as a police officer in May, 1995. She was and remains assigned to the patrol division. On or about February 2, 2004, Plaintiff learned that she was pregnant with her first child. She immediately informed her direct supervisor, Lieutenant Donald Tombaugh. He requested that she determine whether she could continue her full duties as a patrol officer. Plaintiff's treating physician advised her that she should avoid lifting over 25 pounds and avoid the risk of physical trauma to her unborn child. On February 3, 2004, she met with Lieutenant Tombaugh and Chief of Police Andrews regarding her pregnancy. It was their decision that Plaintiff should immediately take a light duty position.

---

[1] To the extent that the Township's collective bargaining agreement touched on light duty, it provided that such assignments would be granted "as decided by the Chief of Police and the Board of Supervisors." This discretion was exercised in a uniform manner, as described herein, until Plaintiff became pregnant. It was then that Defendant imposed, for the first time ever, an artificial limitation on the duration of light duty assignments.

Plaintiff was then assigned to duties within the station house and she worked initially at the front desk where members of the public would come to register complaints or make inquiries. As with past practice, this light duty work was work which normally would be performed by a police officer as part of his normal duties. As with the past practice, the Defendant did not establish any termination date for the Plaintiff's light duty assignment. Rather, Plaintiff could work light duty as long as her doctor would allow or until she gave birth. The Plaintiff then commenced her light duty assignment in accordance with this past policy and practice.

It is undisputed that, approximately one month later, the rules applicable to Plaintiff's pregnancy changed. On or about March 4, 2004, Chief Andrews and Township Supervisor Larry Curtis met with the Plaintiff and they informed her that they were terminating her light duty assignment. Plaintiff was told that she would have to either return to full duties as a patrol officer or, if she chose to abide by her doctor's restrictions, she would have to take time off by using her accumulated vacation and sick time benefits. The pretext for the sudden and drastic change in policy was the Defendants' claim that the police force was short on manpower. However, since the Plaintiff could not return to full patrol duties in light of her doctor's restrictions, she would not be able to perform any work under this newly-enacted restrictive policy. Thus, she would be removed from the work force completely. In this way, the Chief's new light duty policy would not alleviate the alleged manpower shortage but clearly would exacerbate the alleged problem. Moreover, no other changes were made to deal with any purported manpower shortage. In this regard, there was no department-wide announcement of the change to light duty policy which was being applied to the Plaintiff's pregnancy.

The Plaintiff objected to this new policy as being unfair because it was being applied retroactively to the commencement of her partial disability and because it was wholly inconsistent with the long-standing practice of the department. In response to the Plaintiff's objections, the Chief and Supervisor Curtis decided to postpone the implementation of the new policy so that they could reconsider their strategy. However, following this, the Plaintiff never heard back directly from the Defendant regarding the light duty assignment. Rather, within a week or so, the Defendant notified the Plaintiff's union that the Defendant was now going to change the light duty policy again this time to permit the Plaintiff to take a total of 115 days of light duty, which the Defendant asserted matched the duration of the light duty assignment of the one and only other female patrol officer to become pregnant. However, the duration of the light duty assignment of that officer, B.J. Pierce, was *not* limited by any artificial deadline imposed by the Defendant.[2] To the contrary, under the long established practice, the duration of Pierce's light duty assignment was co-extensive with the duration of her pregnancy. It just happened that Pierce delivered her child after 115 days of light duty. Therefore, Plaintiff was being treated differently than even Pierce. Again, there was no department-wide notice given regarding the change to the light duty policy which was being applied to Plaintiff's pregnancy.

Unfortunately for the Plaintiff, the newly imposed limitation of 115 days was insufficient to cover the duration of her pregnancy. In fact, it is unlikely that 115 days of light

---

[2] Pierce was the only other female police officer in the department. She resigned her position in June, 2003 due to alleged acts of sexual discrimination and retaliation by the Township and members of the police force. In August, 2004, Pierce filed a lawsuit against the Township seeking compensation for this wrongful discrimination.

duty would be sufficient to cover the duration of any pregnancy-related partial disability. As such, the Plaintiff's light duty assignment ended on July 14, 2004 and she gave birth on October 5, 2004.

II.	LIABILITY

The Defendant is guilty of discriminatory practices which violate Title VII of the Civil Rights Act, the Pregnancy Discrimination Act and the Pennsylvania Human Relations Commission Act. After the Plaintiff commenced her light duty assignment, the Defendant revised its policy two times, first to terminate the assignment and second to extend the assignment for a period of no more than 115 days. Never before the Plaintiff's pregnancy-related disability had any artificial time restrictions whatsoever been placed upon the duration of light duty assignments. All of the light duty assignments were co-extensive with the duration of the officer's partial disability. Thus, under the law, it is clear that the Plaintiff was a member of a protected class, that she was qualified for the light duty assignment, that she suffered an adverse employment action and that others similarly situated but not of the protected class had been treated more favorably than she had been treated.

The Defendant's proffered pretext for the adverse employment action is not credible and does not provide a safe harbor for Defendants' wrongful act of discrimination. The Defendant claimed that after Plaintiff became pregnant, it could no longer abide by its long-standing practice because of a manpower shortage. However, the newly-enacted limitation on the

5.

duration of light duty assignments would not alleviate that shortage. To the contrary, it would make the shortage worse because it removed the Plaintiff from the work force. Moreover, Chief Andrews, other high-ranking police officers, at least one member of the Board of Supervisors and the Township's legal counsel have made statements reflecting discriminatory animus towards women and pregnant women on the police force.

III.     DAMAGES

A. Work Loss

As a result of the Defendants' illegal and discriminatory actions, the Plaintiff lost approximately twelve weeks of salary which amounts to approximately $14,101.20.

B. Emotional and Mental Distress

The Plaintiff is entitled to full and complete compensation for all of the mental distress and anxiety caused by the Defendants' wrongful and illegal conduct.

C. Attorneys' Fees and Costs

The Plaintiff is entitled to an award of attorneys' fees and costs.

IV. <u>WITNESSES</u>

The Plaintiff may call any or all of the following witnesses at the time of trial:

| Name | Damage | Liability |
|---|---|---|
| 1. Plaintiff, Lesley Mitchell | X | X |
| 2. Peter Mitchell | X | X |
| 3. Chief Richard Andrews<br>c/o Millcreek Township Police Department | X | X |
| 4. Lieutenant Donald Tombaugh | X | X |
| 5. B.J. Pierce<br>c/o Attorney Richard Ruth<br>1026 West 26th Street<br>Erie, PA | X | X |
| 6. Millcreek Township Supervisor Joe Kujawa | X | X |
| 7. Millcreek Township Supervisor Brian McGrath | X | X |
| 8. Millcreek Township Supervisor Larry Curtis | X | X |
| 9. Suzanne Weber | X | X |
| 10. Mr. Richard Schau<br>c/o Emergycare | X | X |
| 11. Attorney Mary Jarvie | X | X |
| 12. Attorney Richard Perhacs | X | X |
| 13. Bonnie Schlabach | X | X |
| 14. Officer Chris Lucas<br>c/o Millcreek Township Police Department | X | X |

7.

| Name | Damage | Liability |
|---|---|---|
| 15. Officer Anthony Chimera<br>c/o Millcreek Township Police Department | X | X |
| 16. Officer Michael Schleicher<br>c/o Millcreek Township Police Department | X | X |

| Name | Damage | Liability |
|---|---|---|
| 17. Officer Rick Havern<br>c/o Millcreek Township Police Department | X | X |
| 18. Officer Eric Smith<br>c/o Millcreek Township Police Department | X | X |
| 19. Richard Figaski | X | X |
| 20. Officer Fred Munch<br>c/o Millcreek Township Police Department | X | X |
| 21. Officer Dan Wells<br>c/o Millcreek Township Police Department | X | X |
| 22. William Detisch | X | X |
| 23. William Storten | X | X |
| 24. Gerald Wolf | X | X |
| 25. All individuals identified in Rule 26(a)(1) Initial Disclosures | X | X |

Plaintiff reserves the right to call as a witness any of the individuals identified in the Defendants' pretrial narrative statement.

V.  **EXHIBITS**

The Plaintiff may offer into evidence the following exhibits at the time of trial:

1. Records and writings maintained by the Defendant regarding light duty assignments, including but not limited to all data calendars and roll call records;

2. Records maintained by the Defendant regarding the Plaintiff's light duty assignment;

3. Lieutenant Tombaugh's memo dated June 28, 2004;

4. Physician's work slips dated February 2, 2004, March 11, 2004 and November 18, 2004;

5. Board of Supervisors unsigned memos dated March 17, 2004 and May 10, 2004;

6. Plaintiff's grievance dated March 25, 2004;

7. Chief Andrews' response to Plaintiff's grievance dated March 30, 2004;

8. Board of Supervisors' response to Plaintiff's grievance dated April 12, 2004;

9. Plaintiff's salary and earnings records;

10. Attorney Perhacs letter to EEOC, August 9, 2004;

11. All documents produced in discovery by the Plaintiff and/or by the Defendant;

12. Deposition transcripts of all individuals who submitted to depositions in this case and/or in the case of Pierce v. Millcreek Township.

The Plaintiff reserves the right to offer into evidence any of the exhibits identified in the Defendants' pretrial narrative statement.

        Respectfully submitted,

        ELDERKIN, MARTIN, KELLY & MESSINA


        By  /s/ Craig A. Markham
            Craig A. Markham, Esquire
            Attorney for Plaintiff
            150 East Eighth Street
            Erie, Pennsylvania 16501
            (814) 456-4000